# Illinois Official Reports

## Appellate Court

---

### *People v. Stoecker*, 2019 IL App (3d) 160781

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD LEE STOECKER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0781 |
| Filed | April 26, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Stark County, No. 96-CF-14; the Hon. Michael P. McCuskey, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Andrew J. Boyd, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James D. Owens, State's Attorney, of Toulon (Patrick Delfino, David J. Robinson, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justice Carter concurred in the judgment and opinion.<br>Justice Lytton dissented, with opinion. |

**OPINION**

¶ 1    Defendant, Ronald Lee Stoecker, appeals the dismissal of his petition for relief from judgment, arguing that (1) his due process rights were violated where the court did not give him a meaningful opportunity to respond to the motion to dismiss and the court held an *ex parte* hearing on the motion and (2) his counsel did not adequately represent him. We affirm.

¶ 2                                  I. BACKGROUND

¶ 3    In 1998, a jury convicted defendant of first degree murder (720 ILCS 5/9-1(a)(2) (West 1996)) and aggravated criminal sexual assault (*id.* § 12-14(a)(2)). The evidence at trial established that 15-year-old Jean Humble left the Children's Home in Peoria, Illinois, at approximately 8:45 p.m. on May 29, 1996. Humble accepted a ride from defendant, who drove her to a remote area, sexually assaulted her, cut her throat, and left her. Humble walked to get help. The attack occurred within a mile of defendant's previous residence, which was vacant at the time. Humble arrived at the home of Sadie Streitmatter at 10:45 p.m. and told Streitmatter that she had been raped. Streitmatter called 911, and an ambulance transported Humble to a hospital in Peoria around 12 a.m. At the hospital, Humble was unable to speak but responded to questions by writing her responses. She indicated that her assailant was driving a red, four-door car. Humble died in the hospital 30 days later.

¶ 4    On the day of the attack, defendant had attended a class in Peoria at the Center for Prevention of Abuse from 6 to 8 p.m. A member of the class testified that he saw defendant leave in a red car. At 4:30 a.m. the morning after the attack, defendant purchased a plane ticket to Costa Rica in cash and left the country. He had told his boss earlier that month that if he got into any legal trouble he would flee to Costa Rica due to their lenient extradition rules. Eighteen months after the attack, defendant was apprehended in Costa Rica and extradited to Illinois.

¶ 5    Defendant's family helped him cover up the crime. The morning after the attack, an off-duty police officer saw defendant's brother removing and burning the interior of the red car. Defendant's family testified that the car was inoperable that day due to a blown engine, his brother was disassembling the car to sell it as scrap metal, and it was common for them to burn things on their property. Defendant's mother testified that the whole Stoecker family had planned to move to Costa Rica in January 1996. They knew that moving to Costa Rica would be a violation of defendant's parole, so he planned to leave after his weekly class so he had a week before the violation would be noticed. His family also testified that, on the day of the attack, defendant arrived home around 9 p.m. He was clean, and his demeanor was normal. His mother took him to the airport just after midnight.

¶ 6    The court sentenced defendant to concurrent terms of life and 30 years' imprisonment. We affirmed his convictions and sentences on direct appeal. *People v. Stoecker*, No. 3-98-0750 (1999) (unpublished order under Illinois Supreme Court Rule 23). Defendant then filed numerous unsuccessful postconviction petitions and petitions for relief from judgment. *People v. Stoecker*, 2015 IL App (3d) 140128-U; *People v. Stoecker*, 2014 IL 115756; *People v. Stoecker*, 2014 IL App (3d) 130389-U; *People v. Stoecker*, 2012 IL App (3d) 120183-U; *People v. Stoecker*, 384 Ill. App. 3d 289 (2008).

¶ 7     In 2016, defendant filed another *pro se* petition for relief from judgment, which is the subject of this appeal. See 735 ILCS 5/2-1401 (West 2016). In the *pro se* petition, defendant contended that his sentence to life imprisonment was void under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and because the circuit court did not explicitly state on the record the aggravating circumstances necessitating natural life imprisonment. He argued that *Apprendi* now applied retroactively to his case based on the United States Supreme Court cases of *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 578 U.S. ___, 136 S. Ct. 1257 (2016). He further contended that he acted diligently in bringing his petition because he did "did not learn of the retroactivity of *Johnson* and *Welch* until June 2016, from a Jailhouse Lawyer."

¶ 8     On November 14, 2016, the State filed a motion to dismiss the petition, alleging that defendant's petition was not timely filed, as it was filed 16 years after judgment was entered and defendant did not provide a reasonable explanation for such delay. Moreover, the State said that the issues defendant sought to raise had previously been litigated. Appointed counsel was served with the motion to dismiss but filed no response. On November 18, 2016, the court held a hearing on the motion to dismiss. There is no indication in the record that appointed counsel received notice of the hearing. The State was the only party present at the hearing. The court stated that defendant's presence was not required. The court did not reference appointed counsel at the hearing. The court dismissed the petition at the hearing, stating: "[T]he Court finds the People's motion and memorandum persuasive and correct as a matter of law." Defendant filed a *pro se* motion to reconsider, alleging, *inter alia*, that he was not given the opportunity to respond to the motion since the hearing was held only four days after the motion to dismiss was filed. Appointed counsel did not file any postjudgment motions. The court did not hold a hearing on defendant's motion to reconsider; instead, the court issued a written order denying the motion.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, defendant argues (1) that his due process rights were violated where the court granted the motion to dismiss without giving defendant a meaningful opportunity to respond and the court held an *ex parte* hearing on the motion with only the State present and (2) that appointed counsel inadequately represented defendant where he failed to file, appear, or provide any representation to defendant. We find that, even accepting defendant's argument that his due process rights were violated, any such violation would be harmless error, as the deficiencies in the petition could not be cured by remand. As the deficiencies in the petition could not be cured, defense counsel acted appropriately in this situation.

¶ 11    "We review *de novo* a claim asserting the denial of due process (*People v. Bradley*, 2017 IL App (4th) 150527, ¶ 13), as we do the dismissal of a section 2-1401 petition (*People v. Vincent*, 226 Ill. 2d 1, 18 (2007))." *People v. Rucker*, 2018 IL App (2d) 150855, ¶ 16. The constitutional right to procedural due process entitles an individual to "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re D.W.*, 214 Ill. 2d 289, 316 (2005). "[T]he fundamental right to the opportunity to be heard ' "has little reality or worth unless one is informed that the matter is pending." ' " *Rucker*, 2018 IL App (2d) 150855, ¶ 17 (quoting *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 28, quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). However,

" '[a]utomatic reversal is only required where an error is deemed "structural," *i.e.*, a systemic error which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." ' *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009) (quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005)). *** "[M]ost errors of constitutional dimension are subject to a harmless error analysis. Only those constitutional violations that are 'structural defects in the constitution of the trial mechanism,' such as total deprivation of the right to trial counsel or absence of an impartial trier of fact, are *per se* error that necessitate remandment for a new proceeding." *People v. Shaw*, 186 Ill. 2d 301, 344-45 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)).' " *People v. Sheley*, 2017 IL App (3d) 140659, ¶ 16.

"Harmless-error analysis is 'based on the notion that a defendant's interest in an error-free trial must be balanced against societal interests in finality and judicial economy.' " *People v. Mullins*, 242 Ill. 2d 1, 23 (2011) (quoting *People v. Simms*, 121 Ill. 2d 259, 275-76 (1988)). When conducting harmless error analysis, we determine whether the outcome would have been the same regardless of the error. See *id.* We determine harmless error based on the particular facts of each case, considering the record as a whole. *People v. Howard*, 147 Ill. 2d 103, 148 (1991).

¶ 12        Even if we were to accept defendant's argument that his due process rights were violated, we find that any error in failing to allow defendant to respond to the State's motion to dismiss his petition does not rise to the level of structural error and is, therefore, subject to harmless error analysis. Defendant's petition is without merit. All of the issues raised could have been raised on one of his previous six appeals. In fact, he previously challenged his sentence, including raising an *Apprendi* issue. See *Stoecker*, 2014 IL App (3d) 130389-U. Moreover, defendant filed his petition more than 16 years after the deadline for filing a section 2-1401 petition. His reason for the delay was that he did not find out that *Johnson*, 576 U.S. ___, 135 S. Ct. 2551, and *Welch*, 578 U.S. ___, 136 S. Ct. 1257, were retroactive until June 2016. The retroactivity of *Johnson* and *Welch* have no applicability to defendant's case. As we stated in his previous appeal, "the rule established in *Apprendi* does not apply retroactively to cases whose direct appeals were exhausted prior to *Apprendi* being decided." *Stoecker*, 2014 IL App (3d) 130389-U, ¶ 16 (citing *People v. De La Paz*, 204 Ill. 2d 426 (2003)). We do not find that failing to reverse this case where defendant has already had six bites at the apple would "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." *People v. Herron*, 215 Ill. 2d 167, 186 (2005). Enough judicial resources have already been wasted on another meritless collateral pleading filed by defendant. Moreover, defendant has previously fled to Costa Rica to elude authorities in this case. See *Stoecker*, No. 3-98-0750.

¶ 13        Defendant cites the Fourth District case of *People v. Bradley*, 2017 IL App (4th) 150527, ¶ 21, and the Second District case of *Rucker*, 2018 IL App (2d) 150855, for the proposition that failing to give defendant the opportunity to respond to the State's motion to dismiss is inherently prejudicial and undermines the integrity of the judicial process. We note that the Fourth District in *Bradley* held that "the trial court's failure to give defendant an opportunity to respond to the State's motion to dismiss was inherently prejudicial and undermined the integrity of the proceedings." *Bradley*, 2017 IL App (4th) 150527, ¶ 21. However, the Fourth District has subsequently done exactly what we do here, in similar situations. See *People v.*

*Lofton*, 2018 IL App (4th) 150743-U (finding that, although circuit court dismissed the defendant's section 2-1401 petition two days after the State filed its motion to dismiss, any error was harmless where the defendant had previously filed one section 2-1401 petition and three postconviction petitions and the petition was meritless); *People v. Harris*, 2018 IL App (4th) 160242-U (likewise finding any error in not allowing the defendant a meaningful opportunity to respond harmless where the petition was meritless and the defendant had previously had six bites at the apple).[1] Moreover, while the Second District in *Rucker* noted that the defendant made an argument based off of this holding in *Bradley*, it only held that failing to allow the defendant to respond amounted to a due process violation. See *Rucker*, 2018 IL App (2d) 150855, ¶¶ 25-26. The court never held that such a violation would be inherently prejudicial and undermine the judicial process. Further, there is no indication that the defendants in *Bradley* and *Rucker* had amassed such a large number of meritless collateral challenges to their convictions or sentences. We find those cases distinguishable on that fact alone.

¶ 14        Defendant further argues that his appointed counsel provided inadequate representation where he failed to appear, file, or provide any representation to defendant. At the outset, we note that in *People v. Walker*, 2018 IL App (3d) 150527, ¶ 24, this court discussed the lack of clarity regarding the level of assistance required by appointed counsel in a section 2-1401 proceeding. The *Walker* court noted that in *Tedder v. Fairman*, 92 Ill. 2d 216, 226-27 (1982), "the supreme court held that although indigent criminal defendants may receive appointed counsel to represent them in civil actions, appointed counsel is not required in such civil proceedings. The *Tedder* court stated that the level of assistance required for appointed counsel in such instances is to exercise due diligence." *Walker*, 2018 IL App (3d) 150527, ¶ 25. The *Walker* court noted that, subsequently, the supreme court in *People v. Pinkonsly*, 207 Ill. 2d 555, 568 (2003), held that it was inappropriate to hold appointed counsel in section 2-1401 proceedings to the ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Walker*, 2018 IL App (3d) 150527, ¶ 26. The court noted that our supreme court had stated that, " '[a]ssuming that the defendant was entitled to the same level of assistance on his section 2-1401 petition as on a postconviction petition, the defendant did not receive unreasonable assistance.' " *Id.* ¶ 27 (quoting *Pinkonsly*, 207 Ill. 2d at 568). The court in *Walker* surmised that, since in *Pinkonsly* the parties had not asked the supreme court to decide whether the reasonable assistance standard applied to attorneys appointed in section 2-1401 proceedings, this was arguably *dicta*. *Id.* After *Pinkonsly*, this court issued an opinion in *People v. Welch*, 392 Ill. App. 3d 948, 952 (2009), which also "assume[d] that a section 2-1401 petitioner is entitled to the same level of assistance as a postconviction petitioner," though the parties did not raise an issue with the level of assistance in this situation. See *Walker*, 2018 IL App (3d) 150527, ¶ 28. The *Walker* court stated, "Although our consideration of the above cases would persuade us to find that a section 2-1401 petitioner who is appointed counsel is entitled to reasonable assistance, we need not reach this issue. As we will discuss below, we find that appointed counsel failed to provide adequate assistance under either standard (reasonable assistance or due diligence)." *Id.* ¶ 29.

---

[1]We acknowledge that unpublished decisions do not serve as authority for our decision. We mention them only to point out that we are not the first court to apply common sense to the issue at hand.

¶ 15    Like *Walker*, we do not need to determine which standard of assistance applies here because under either standard, appointed counsel's performance was adequate. Under the reasonable assistance standard counsel has "an obligation to ensure that any existing claims are properly presented to the court." *Id.* ¶ 31. "[D]ue diligence require[s] appointed counsel to perform the tasks assigned by the court. [Citation.] In *Tedder*, that meant amending defendant's *pro se* petition, which the court told counsel was inadequate." *Id.* ¶ 36. Here, counsel could not cure the defects in defendant's petition. Therefore, under either of these standards, counsel adequately represented defendant.

¶ 16    Even if we were to impute the stricter ineffective assistance of counsel standard on counsel's performance, defendant still would not prevail. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced defendant. *Strickland*, 466 U.S. at 687. Because a defendant must satisfy both prongs of the *Strickland* test to prevail, the failure to establish either precludes a finding of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11. Defendant cannot show that he was prejudiced by counsel's allegedly deficient performance. All of the issues either could have been raised or were previously raised and, therefore, were barred by *res judicata*. Moreover, defendant could not have shown that he acted diligently in filing the petition outside of the requisite time frame.

¶ 17    We recognize the due process concerns inherent in the trial court's handling of this matter. However, the facts of this case call for us to affirm. Defendant has shown himself to be not only a very dangerous man but also one who, with the help of his family, will flee the jurisdiction. We find that to return defendant to the circuit court for a hearing he cannot win would needlessly expose both law enforcement and the public in general to an unreasonable risk.

¶ 18                                      III. CONCLUSION
¶ 19    For the foregoing reasons, we affirm the judgment of the circuit court of Stark County.

¶ 20    Affirmed.

¶ 21    JUSTICE LYTTON, dissenting:
¶ 22    The majority upholds the dismissal of defendant's petition for relief from judgment, finding that (1) any potential error in failing to give defendant the opportunity to respond to the motion to dismiss was harmless error, and (2) counsel's performance was adequate. I address each point in turn.

¶ 23    With regard to the first issue, the majority merely concludes that any potential error resulting from the court's failure to give defendant 21 days to respond to the motion to dismiss is harmless. Significantly, the majority does not answer the specific question as to whether any error actually occurred. Relying upon the holdings in *Bradley*, 2017 IL App (4th) 150527, and *Rucker*, 2018 IL App (2d) 150855, I address and answer this specific question in the affirmative.

¶ 24    In *Bradley*, the circuit court granted the State's motion to dismiss the defendant's *pro se* section 2-1401 petition a mere two days after the State had filed it, before the defendant had a

chance to respond. *Bradley*, 2017 IL App (4th) 150527, ¶ 19. In *Rucker*, the State filed a motion to dismiss the defendant's *pro se* section 2-1401 petition. *Rucker*, 2018 IL App (2d) 150855, ¶ 8. The court held a hearing on the motion the same day it was filed, stating that the defendant did not need to be brought to court. *Id.* In both cases, the courts held that it violates due process "to grant a motion to dismiss a complaint without allowing the opposing party notice and a meaningful opportunity to be heard." *Bradley*, 2017 IL App (4th) 150527, ¶ 16; *Rucker*, 2018 IL App (2d) 150855, ¶ 30. Here, the court held a hearing on the State's motion to dismiss only four days after the motion was filed. Like *Bradley* and *Rucker*, defendant was not given a meaningful opportunity to respond to the motion. Moreover, defendant was represented by counsel. The record does not show that counsel was given notice of the hearing, and the hearing was held without defendant or counsel being present. Therefore, I would expressly find that defendant's due process rights were violated. Ultimately, however, I agree with the majority's conclusion that the failure to give defendant 21 days to respond to the State's motion to dismiss was harmless.[2] I, therefore, concur in that portion of the analysis.

¶ 25   I dissent, however, on the alternative issue—whether counsel's performance was adequate. I believe that under either the reasonable assistance standard or the due diligence standard, counsel's failure to appear, file, or provide any representation to defendant amounted to inadequate counsel. In this case, the record does not show that appointed counsel provided any actual representation to defendant. He did not show up in court (though the record does not show that he received notice of the hearing on the motion to dismiss), he did not amend defendant's *pro se* section 2-1401 petition, he did not amend defendant's *pro se* motion for reconsideration, he did not file any postjudgment motions, nor does the record show that he spoke to defendant. In my opinion, the failure to provide any actual representation to defendant amounted to inadequate performance under either the reasonable assistance or due diligence standards. Moreover, the majority conjectures that defendant would not be able to show prejudice under the ineffective assistance of counsel standard. Our supreme court has specifically held that the *Strickland* standard does not apply to section 2-1401 proceedings. See *Pinkonsly*, 207 Ill. 2d at 568. This discussion of prejudice has no bearing on the adequacy of counsel here. I would vacate the judgment dismissing defendant's petition and remand for new section 2-1401 proceedings with new counsel.

¶ 26   I would be remiss if I did not note that whether defendant is "a very dangerous man" or "will flee the jurisdiction" (*supra* ¶ 17) has no bearing on the legal issues presented on appeal. Moreover, the section 2-1401 proceeding at issue in the circuit court could be accomplished without defendant present, as he had appointed counsel.

---

[2]In doing so, I note that the majority cites two unpublished Fourth District cases that apply harmless error in a similar scenario. It does not appear that there are any published cases that do so. Therefore, we have no actual authority contradicting the holding in *Bradley* that the failure to give a defendant an opportunity to respond to the State's motion to dismiss is inherently prejudicial. See *Bradley*, 2017 IL App (4th) 150527, ¶ 21.