**2020 IL 124807**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124807)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
RONALD L. STOECKER, Appellant.

*Opinion filed September 24, 2020.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Garman, Karmeier, Neville, and Michael J. Burke concurred in the judgment and opinion.

**OPINION**

¶ 1 Over 16 years after Ronald L. Stoecker's convictions and sentences for first degree murder and aggravated criminal sexual assault were affirmed on direct appeal and after numerous other petitions for collateral relief were dismissed or denied, he filed the instant petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2016)). The State

moved to dismiss the petition on procedural grounds. Appointed counsel did not respond to the motion and was not present for the ruling on the motion; nonetheless, the circuit court of Stark County dismissed the petition as a matter of law. The appellate court held that any procedural due process violation relating to the dismissal of the petition was harmless error and that appointed counsel's representation was not inadequate where the defects in the petition could not be cured. 2019 IL App (3d) 160781, ¶¶ 10-12, 14-16. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                     BACKGROUND

¶ 3        In 1998, a jury convicted petitioner of first degree murder and aggravated criminal sexual assault of a 15-year-old girl. The evidence adduced at trial established that petitioner drove the girl to a remote, rural area of Illinois, sexually assaulted her, slit her throat, and left her for dead in a field. Petitioner was sentenced to concurrent terms of natural life and 30 years in prison.

¶ 4        His convictions and sentences were affirmed on direct appeal. *People v. Stoecker*, 308 Ill. App. 3d 1107 (1999) (table) (unpublished order under Illinois Supreme Court Rule 23). Thereafter, petitioner filed numerous unsuccessful petitions for collateral relief.[1] Relevant to this appeal, in 2005 petitioner filed a petition for relief from judgment, contending *inter alia* that he was entitled to resentencing. He argued that the circuit court's procedures in imposing a life sentence for murder violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), where the United States Supreme Court held that, other than the fact of a prior conviction,

---

[1]Petitioner's collateral challenges have pursued various legal avenues and been denied relief in mostly unpublished dispositions. 2019 IL App (3d) 160781 (third section 2-1401 petition); *People v. Stoecker*, 2015 IL App (3d) 140128-U (second section 2-1401 petition); *People v. Stoecker*, 2014 IL 115756 (motion for postconviction DNA testing); *People v. Stoecker*, 2014 IL App (3d) 130389-U (section 2-1401 petition); *People v. Stoecker*, 2012 IL App (3d) 120183-U (attempted successive postconviction petition); *People v. Stoecker*, 384 Ill. App. 3d 289 (2008) (postconviction petition); *People v. Stoecker*, 308 Ill. App. 3d 1107 (1999) (table) (unpublished order under Illinois Supreme Court Rule 23)   (direct appeal); see also *Stoecker v. Ryker*, No. 08-1260, 2009 WL 269096 (C.D. Ill. Jan. 30, 2009) (federal *habeas* petition); *Stoecker v. Lashbrook*, No. 1:2017cv01032 (C.D. Ill. Jan. 25, 2017) (attempted successive federal *habeas* petition).

any fact that increases the penalty beyond the statutory maximum sentence must be submitted to a jury and proved beyond a reasonable doubt.

¶ 5     The circuit court construed the filing as a petition for postconviction relief and appointed counsel to represent petitioner. In a report filed with the court, counsel thoroughly addressed petitioner's *Apprendi* claim and the legal underpinnings of his argument. Recognizing that petitioner's claim had been squarely addressed by this court in *People v. De La Paz*, 204 Ill. 2d 426 (2003), counsel concluded that "the Illinois Supreme Court's decision controls and we need not address this issue further." The circuit court dismissed the petition. Although petitioner filed four subsequent amended petitions for relief related to ineffective assistance of counsel claims, he did not appeal from the court's ruling on the *Apprendi* issue.

¶ 6     Seven years later, in 2012, petitioner filed another petition for relief from judgment, again raising the *Apprendi* issue. The circuit court dismissed the petition as untimely. The appellate court affirmed, holding that, under *De La Paz*, the rule established in *Apprendi* did not apply retroactively to cases whose direct appeals were exhausted prior to the Supreme Court's decision. *Stoecker*, 2014 IL App (3d) 130389-U, ¶ 16.

¶ 7     In August 2016, petitioner filed yet another petition for relief from judgment under section 2-1401 of the Code, seeking to collaterally attack his sentence. Therein, petitioner reasserted that his life sentence was improper under *Apprendi*. Citing the recent Supreme Court decisions in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 578 U.S. ___, 136 S. Ct. 1257 (2016), he contended that *Apprendi* now applied retroactively to cases on collateral review. Additionally, petitioner argued that the circuit court failed to sufficiently articulate the basis for its finding to support his enhanced sentence. He further contended that his noncompliance with section 2-1401's two-year time limitation was excused; petitioner maintained that his sentence was void and that a void sentence could be attacked at any time. He also requested the appointment of counsel.

¶ 8     On September 26, 2016, the circuit court appointed counsel to represent petitioner and ordered the State to respond to the petition within 30 days. The certificate of mailing filed by the circuit clerk reflects that appointed counsel was served with the appointment order by regular mail on that date.

¶ 9       On November 14, 2016, the State moved to dismiss the petition, arguing that the claim was both untimely, and barred by *res judicata* because the issues had been previously litigated and other matters asserted were of record at the time of trial. The certificate of service reflects that the State served the motion on appointed counsel by e-mail and regular mail the same day.

¶ 10      Four days later, on November 18, 2016, the circuit court dismissed the petition, announcing its ruling on the record. The report of proceedings reflects that only the State was present for the ruling, though it made no argument before the court. The record does not show that appointed counsel was notified of the proceeding. After stating that petitioner's presence was not required, the court ruled that it had reviewed the file and the pleadings and determined that the State's motion was correct as a matter of law. The certificate of mailing reflects that appointed counsel was served with the court's order.

¶ 11      Petitioner then filed a *pro se* motion to reconsider, arguing that the court had not given him an opportunity to respond to the State's motion or amend his petition. The circuit court denied the motion, finding that "nothing contained therein *** change[d] the [c]ourt's decision."

¶ 12      On appeal, petitioner argued that his due process rights were violated because the circuit court failed to give him a meaningful opportunity to respond to the State's motion to dismiss and because it held an *ex parte* hearing on the motion. He further argued that his counsel's performance was deficient.

¶ 13      The appellate court affirmed. 2019 IL App (3d) 160781, ¶¶ 10-20. The court found that, even if petitioner's due process rights were violated, any violation was harmless because the deficiencies in the petition could not be cured on remand. *Id.* ¶ 10. The petition was untimely, barred by *res judicata*, and meritless. *Id.* ¶¶ 12, 16. With respect to appointed counsel's representation, the appellate court found that under any standard of representation, counsel's representation was not inadequate where the defects in the petition were not curable. *Id.* ¶¶ 14-16. Justice Lytton dissented, finding that appointed counsel's failure to appear, file any pleadings, or provide any representation was inadequate under any relevant standard. *Id.* ¶ 25 (Lytton, J., dissenting). We subsequently granted petitioner leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018).

¶ 14                                      ANALYSIS

¶ 15                                  *Due Process Claim*

¶ 16        We first address petitioner's contention regarding the manner in which the circuit court heard and ruled upon his petition. Petitioner reasserts that his due process rights were violated because he was not given a meaningful opportunity to respond to the State's motion to dismiss and because the court dismissed his petition during an *ex parte* hearing. He maintains that these errors were necessarily prejudicial because they affected the "integrity of the proceedings."

¶ 17        A procedural due process claim presents a question of law, which we review *de novo*. *People v. Cardona*, 2013 IL 114076, ¶ 15. An individual's right to procedural due process is guaranteed by the United States and Illinois Constitutions. See U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. This right entitles an individual to "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re D.W.*, 214 Ill. 2d 289, 316 (2005). "Due process is a flexible concept," and thus, not all circumstances call for the same type of procedure. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009).

¶ 18        In the context of a petition for relief from judgment, section 2-1401 of the Code provides a statutory mechanism for vacating final judgments older than 30 days. 735 ILCS 5/2-1401 (West 2016). It is a civil remedy that extends to both criminal and civil cases. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). We have consistently held that proceedings under section 2-1401 are governed by the usual rules of civil practice. *Id.* As such, petitions filed thereunder are treated as complaints "inviting responsive pleadings." *Id.* Accordingly, the respondent may answer the petition, move to dismiss it, or choose not to file a responsive pleading. *Id.*

¶ 19        In *Vincent*, this court examined the propriety of a *sua sponte* dismissal by the court and its impact on procedural due process where no responsive pleading had been filed. We explained that, where the State chose to forgo filing any response to a section 2-1401 petition, that inaction served as an admission of all well-pleaded facts. *Id.* at 14. Once the 30-day period during which the State could have filed an answer has elapsed, the circuit court may *sua sponte* render judgment on the pleadings, without providing a petitioner with notice or an opportunity to respond. *Id.* at 12-13.

¶ 20 In contrast, Illinois courts have recognized that basic notions of fairness dictate that a petitioner be afforded notice of, and a meaningful opportunity to respond to, any motion or responsive pleading by the State. See *People v. Rucker*, 2018 IL App (2d) 150855; *People v. Bradley*, 2017 IL App (4th) 150527; *People v. Gaines*, 335 Ill. App. 3d 292, 295-96 (2002), *abrogated on other grounds by Vincent*, 226 Ill. 2d at 12; *People v. Coleman*, 358 Ill. App. 3d 1063, 1070 (2005); *Merneigh v. Lane* 87 Ill. App. 3d 852 (1980) (applying the concepts in the context of a complaint for *mandamus*); see also *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993) (notice and an opportunity to respond to a dispositive motion are "deeply imbedded in our concept of fair play and substantial justice").

¶ 21 Procedures exist in our civil practice rules that contemplate notice and an opportunity to be heard in the context of pretrial dispositive motions. See, *e.g.*, Ill. S. Ct. R. 104(b) (eff. Jan. 1, 2018) (requiring service of postcomplaint pleadings on all parties); 735 ILCS 5/2-619(c) (West 2016) (involuntary dismissal statute: "[i]f, upon the hearing of the motion"); 735 ILCS 5/2-1005(c) (West 2016) (summary judgment statute: "the opposite party may prior to or at the time of hearing on the motion"); Ill. S. Ct. R. 184 (eff. July 1, 1982) (permitting any party to call a motion for hearing after its filing). These rules reflect those articulated notions of procedural fairness in the proceedings.

¶ 22 Here, the record reveals that both petitioner and his appointed counsel were served with the State's motion to dismiss. Yet the circuit court ruled on the motion four days after it was filed and served without giving petitioner a reasonable opportunity to respond, thereby bypassing the safeguards provided by our rules of procedure. The record does not reflect that petitioner or appointed counsel were given notice of the proceeding at which the court ruled on the State's motion. Had counsel been given notice, he could have requested a briefing schedule to file a response to the motion, or he could have orally addressed the motion. Alternatively, counsel could have sought to withdraw as appointed counsel. We reiterate today that the protection of a petitioner's right to procedural due process in postjudgment proceedings is of utmost importance, and we trust that this type of procedural violation in the circuit court will not be repeated.

¶ 23 Nevertheless, we find the procedural violation is subject to harmless error review. This court has adhered to a strong presumption that most errors of

constitutional dimension are subject to harmless error analysis. *People v. Averett*, 237 Ill. 2d 1, 13 (2010); *People v. Lofton*, 194 Ill. 2d 40, 61 (2000). Harmless error analysis is "based on the notion that a defendant's interest in an error-free [proceeding] must be balanced against societal interests in finality and judicial economy." *People v. Simms*, 121 Ill. 2d 259, 275-76 (1988). We have explained that automatic reversal is only required where an error is deemed "structural," that is, "a systemic error which serves to 'erode the integrity of the judicial process and undermine the fairness of [the proceedings].' " *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009) (quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005)).

¶ 24        The United States Supreme Court has held that an error qualifies as structural when the error has "consequences that are necessarily unquantifiable and indeterminate." (Internal quotation marks omitted.) *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). This court has adhered to those principles as a matter of state law. See, *e.g.*, *Averett*, 237 Ill. 2d at 14 (where the impact of the circuit court's blanket policy of deferring rulings could be quantified, it was not structural error subject to automatic reversal); *People v. Rivera*, 227 Ill. 2d 1, 22 (2007) (error amenable to harmless error review where it was "possible to qualitatively assess for harm"); see also *People v. Taylor*, 349 Ill. App. 3d 718, 720-21 (2004) (issue amenable to harmless error review where patently incurable as a matter of law).

¶ 25        The error complained of here—a reasonable opportunity to respond to a dispositive motion in a collateral civil proceeding and lack of notice before it was dismissed as a matter of law—cannot be equated with the narrow class of automatically reversible errors articulated by the United States Supreme Court and this court. Although the error is serious, it does not necessarily render the proceedings automatically unfair or unreliable. The impact of the circuit court's error under these circumstances is not one that is necessarily unquantifiable and indeterminate; rather, the impact is one that can be quantified. Additionally, procedural corrective safeguards are in place to protect against erroneous rulings. See 735 ILCS 5/2-1203 (West 2016). Accordingly, we conclude the error is amenable to harmless error review and that each case is to be judged on its own specific facts.

¶ 26     After reviewing the impact of the error in this case, we determine the error to be harmless because petitioner's claims were procedurally defaulted and patently incurable as a matter of law and because no additional proceedings would have enabled him to prevail on his claim for relief.

¶ 27     The petition was untimely, having been filed 16 years after the expiration of the statute's two-year limitation period. *Id.* § 2-1401(c). Petitioner sought to escape the two-year limit by arguing that his sentence was void. He relied on section 2-1401, which provides that "[n]othing" contained within it "affects any existing right to relief from a void order or judgment." *Id.* § 2-1401(f).

¶ 28     Although a challenge to a void sentence can be raised at any time, this court recognizes only two circumstances in which a judgment will be considered void: (1) when it is entered by a court that lacked personal or subject-matter jurisdiction or (2) when it is based on a statute that is facially unconstitutional and void *ab initio*. *People v. Price*, 2016 IL 118613, ¶¶ 17, 31-32; *People v. Castleberry*, 2015 IL 116916, ¶¶ 11-12; *People v. Thompson*, 2015 IL 118151, ¶¶ 31-33. Neither circumstance applies here. Petitioner never sought to collaterally attack a judgment that was entered without personal or subject-matter jurisdiction, and the judgment was not based on a statute that was declared facially unconstitutional. See *Lucien v. Briley*, 213 Ill. 2d 340, 344-45 (2004) (holding that *Apprendi* did not render the statute authorizing an extended-term sentence based on a judge's finding that the crime was brutal or heinous facially unconstitutional). Consequently, petitioner's section 2-1401 claims, filed 18 years after his conviction and sentence, were untimely, as they were not excused from the procedural requirements of section 2-1401.

¶ 29     Furthermore, *res judicata* barred petitioner's claims. Under the well-settled doctrine of *res judicata*, " 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.' " *People v. Creek*, 94 Ill. 2d 526, 533 (1983) (quoting *People v. Kidd*, 398 Ill. 405, 408 (1947)). The circuit and appellate courts previously adjudicated petitioner's *Apprendi* claim, relying on this court's decision in *De La Paz*, that "the rule established in *Apprendi* does not apply

retroactively to cases whose direct appeals were exhausted prior to *Apprendi* being decided." *Stoecker*, 2014 IL App (3d) 130389-U, ¶ 16.

¶ 30 Nothing in petitioner's newly cited cases of *Johnson* and *Welch* alters that calculus. Rather, those cases merely reaffirm the framework for analyzing when new rules apply retroactively on collateral review, and both are consistent with our decision in *De La Paz*. *Johnson* struck down a portion of the federal sentencing statute as unconstitutionally vague. *Johnson*, 576 U.S. at ___, 135 S. Ct. at 597. *Welch* found that the rule announced in *Johnson* applied retroactively. *Welch*, 578 U.S. at ___, 136 S. Ct. at 1265. *Welch* merely reaffirmed that new constitutional rules of criminal procedure generally do not apply retroactively to cases on collateral review because they regulate only the manner of determining a defendant's culpability, in contrast to substantive rules that alter " 'the range of conduct or the class of persons that the law punishes.' " *Id.* at ___, 136 S. Ct. at 1264-65 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).

¶ 31 *Welch* determined that the new rule in *Johnson* affected the class of persons that the law punishes rather than the judicial procedures by which the statute applied, and therefore, it was a substantive decision having retroactive effect in cases on collateral review. *Id.* at ___, 136 S. Ct. at 1265. Consequently, *Johnson* and *Welch* do not cast doubt on our decision in *De La Paz*, which concluded that *Apprendi* does not apply retroactively to cases on collateral review because it announced a new procedural rule and was not among "those procedures that are implicit in the concept of ordered liberty." (Internal quotation marks omitted.) *De La Paz*, 204 Ill. 2d at 434.

¶ 32 In addition, to the extent petitioner argues that the trial court failed to make a sufficient finding to support his extended-term sentence, that argument was based on the trial court record and could have been raised on direct appeal. Therefore, petitioner could not establish the necessary due diligence in both discovering the claim and presenting the issue 18 years later in his sixth postjudgment filing. *Vincent*, 226 Ill. 2d at 7-8 (holding that relief under section 2-1401 is predicated on due diligence in both discovering the claim and presenting the petition).

¶ 33 Accordingly, we hold the circuit court's procedural error was harmless where petitioner's claims were untenable as a matter of law and where additional proceedings would not enable him to prevail on his claim for relief. Reversal and

remand would serve no purpose and would merely delay the dismissal of the meritless petition.

¶ 34                          *Assistance of Appointed Counsel*

¶ 35        We next address petitioner's contention that his appointed counsel failed to provide him with assistance at any point in the proceedings. Initially, we assess the level of assistance required of appointed counsel under a section 2-1401 proceeding. A petitioner seeking to collaterally attack a judgment has no constitutional right to the assistance of counsel. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (the constitution does not require the assistance of counsel to indigent inmates seeking postconviction relief); accord *People v. Guest*, 166 Ill. 2d 381, 412 (1995). As we have explained, at trial, an attorney serves as a "shield" for defendants to protect them from being " 'haled into court' " and "stripped of their presumption of innocence." *People v. Owens*, 139 Ill. 2d 351, 364 (1990) (quoting *Ross v. Moffitt*, 417 U.S. 600, 610 (1974)). In contrast, petitioners seeking collateral review have already been stripped of the presumption of innocence and have failed to obtain relief on appellate review. *Id.* at 365. Counsel appointed in a collateral proceeding works to advance a petitioner's claim rather than to protect him from prosecution by the State. *Id.*

¶ 36        Additionally, unlike the provisions of the Post-Conviction Hearing Act (725 ILCS 5/122-4 (West 2016)), a petitioner has no express statutory right to the assistance of counsel when filing a section 2-1401 petition collaterally attacking a judgment. *People v. Pinkonsly*, 207 Ill. 2d 555, 568 (2003). Thus, the circuit court is not obligated to appoint counsel in connection with the filing of a 2-1401 petition, but circuit courts have appointed counsel in these proceedings pursuant to the circuit court's exercise of its discretion. See, *e.g.*, *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 44; *People v. Kane*, 2013 IL App (2d) 110594, ¶ 21.

¶ 37        This court has not articulated any specific standards of performance or requirements that apply to counsel appointed to represent a section 2-1401 petitioner. In *Pinkonsly*, we confirmed that the ineffective assistance of counsel standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), did not apply to counsel appointed to represent a petitioner in a section 2-1401 petition. *Pinkonsly*, 207 Ill. 2d at 567. We reasoned that "the right to assistance of counsel

in collateral postconviction proceedings is a matter of legislative grace" and noted that section 2-1401 "does not specify any level of assistance" required of counsel appointed to represent such petitioners. *Id.* at 567-68. Without setting forth any particular minimum standard, we assumed, without deciding, that even if the petitioner was entitled to the same level of assistance as a postconviction petitioner, the petitioner did not receive unreasonable assistance where the putative error was not one cognizable in a section 2-1401 petition. *Id.* at 568.

¶ 38     In *Tedder v. Fairman*, 92 Ill. 2d 216 (1982), this court considered the standards applicable to the appointment of counsel in the context of petitions for *habeas corpus* and *mandamus*, two civil proceedings where inmates alleged they had been deprived of needed medical assistance. After declaring that the circuit court had the discretion to appoint counsel to represent indigent prisoners, we found that appointed counsel was "expected to exercise due diligence in proceeding with the assigned case." *Id.* at 227. Where the circuit court had specifically ordered counsel to assist the petitioners by amending their petitions, which were inadequate, failure to do so was deemed a lack of due diligence, warranting remand. *Id.*

¶ 39     Petitioner contends that the "reasonable assistance" standard applicable under the Post-Conviction Hearing Act should equally apply to appointed counsel in section 2-1401 proceedings. As set forth in Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), the reasonable assistance standard imposes certain specific duties on appointed postconviction counsel. Those duties include (1) consulting with petitioner to ascertain his contentions of constitutional deprivation, (2) examining the record of trial proceedings, and (3) making any amendments to the *pro se* petition necessary to adequately present the petitioner's contentions. *Id.*

¶ 40     A petitioner's right to reasonable assistance under Rule 651(c) derives from the General Assembly's decision to provide for a statutory right to counsel when it established a "statutory mechanism for incarcerated defendants to assert they have been unconstitutionally deprived of their liberty." *People v. Johnson*, 2018 IL 122227, ¶ 17; 725 ILCS 5/122-4 (West 2016). Thus, Rule 651(c) is the mechanism by which the court effectuates the statutory right to counsel under the Post-Conviction Hearing Act and ensures that the purposes of that act are fulfilled. *Johnson*, 2018 IL 122227, ¶ 19.

¶ 41    Yet, as we have explained, "the Post-Conviction Hearing Act *** has no application whatsoever to section 2-1401, an entirely different form of statutory collateral relief." *Vincent*, 226 Ill. 2d at 6. We see no basis to expand the statutorily derived right of reasonable assistance of counsel in postconviction proceedings to section 2-1401 civil proceedings. Grafting the specific requirements of Rule 651 onto the section 2-1401 civil proceeding would introduce unwarranted "exceptions based solely on the criminal-defendant status" of a subset of section 2-1401 petitioners that have no express statutory right to counsel. *Id.* at 14.

¶ 42    Rather, any discretionary appointment of counsel in the context of a section 2-1401 proceeding requires the same due diligence as any lawyer would be required to perform in assisting his or her client. See *Tedder*, 92 Ill. 2d at 226-27 (attorneys are expected to exercise due diligence once appointed); see generally Ill. Rs. Prof'l Conduct (2010). In the context of a section 2-1401 proceeding, relief "is predicated upon proof, by a preponderance of evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition." *Vincent*, 226 Ill. 2d at 7-8. To that end, counsel has an obligation, to the best of his or her legal ability, to make a cogent argument in support of petitioner's section 2-1401 claims and to overcome any procedural hurdles where it can legally and ethically be done.

¶ 43    Thus, we agree with petitioner that, after a discretionary appointment under section 2-1401, counsel's obligations might include amending a petition, responding to any motions to dismiss, and standing on the petition or alternatively withdrawing as counsel. Nevertheless, a claim of lack of due diligence sufficient to warrant remand depends on an arguably meritorious claim.

¶ 44    Here, as appellate counsel has conceded, there was nothing appointed counsel could have done to amend the *pro se* petition or to respond to the motion to dismiss that could have cured the defective pleading. Counsel has no duty to amend a petition where it is incurable as a matter of law. See *People v. Greer*, 212 Ill. 2d 192, 205 (2004) (under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) counsel "who determines that defendant's claims are meritless cannot in good faith file an amended petition on behalf of defendant"). As we explained, the petition was only cognizable if petitioner established a void judgment. Here, the judgment was not

void; it was procedurally time barred by 16 years and was otherwise incurably deficient as a matter of law. No amendment could have cured those defects.

¶ 45    Additionally, it does not appear from the record that counsel was given notice of the proceedings in which the circuit court ruled on the State's motion to dismiss. Had counsel been notified, he would have had an opportunity to either stand on the petition or to withdraw his representation. Thus, on this record, we cannot say counsel's lack of performance was necessarily deficient. Under any standard of due diligence, unless counsel's deficient performance could have reasonably affected the outcome of the proceedings, there would be no reason to remand the matter for further proceedings. Thus, counsel's failure to pursue a meritless claim cannot constitute deficient representation warranting remand. See *Pinkonsly*, 207 Ill. 2d at 568 (counsel's failure to pursue an error that was not cognizable under section 2-1401 could not amount to unreasonable representation).

¶ 46                                    CONCLUSION

¶ 47    In sum, the procedural due process violation was harmless error, and any deficient performance by appointed counsel did not warrant remand where the defects in the section 2-1401 petition could not be cured. Accordingly, we affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

¶ 48    Affirmed.