NOTICE
Decision filed 06/02/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250296-U

NO. 5-25-0296

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 21-CF-215 |
| | ) | |
| MICHELLE D. INGRAM, | ) | Honorable |
| | ) | Karen E. Wall, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Justices Barberis and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We grant appellate counsel's motion to withdraw and affirm the order of the trial court dismissing the defendant's petition for relief from judgment where there is no arguably meritorious argument counsel could make on the defendant's behalf.

¶ 2    The defendant, Michelle D. Ingram, appeals an order of the Vermilion County circuit court dismissing her petition for relief from judgment pursuant to section 2-1401(b-5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(b-5) (West 2024)). The Office of the State Appellate Defender (OSAD), which was appointed to represent her on appeal, filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Counsel considered raising the following three issues: (1) whether the circuit court complied with the requirements of procedural due process before dismissing the petition, (2) whether the defendant's petition set forth an arguably meritorious claim for relief, and (3) whether the defendant's petition was timely filed.

1

Counsel concluded that none of these issues had merit and there were no other potentially meritorious claims to be raised on behalf of the defendant. Upon review, we grant OSAD's motion to withdraw and affirm the order of the circuit court.

¶ 3                              I. BACKGROUND

¶ 4       On April 29, 2021, the State filed an information charging the defendant with six counts of first degree murder and one count of concealment of a homicidal death. The charges alleged that the defendant or one for whose conduct she was legally responsible stabbed Richard Truett in the leg, causing his death, and that she subsequently concealed Truett's body. The State alleged that the murder was committed in a cold, calculated, and premeditated manner pursuant to a preconceived plan, scheme, or design to take a human life. On May 21, 2021, a grand jury returned a superseding indictment on the same charges.

¶ 5       On September 26, 2022, the defendant pled guilty in a fully negotiated plea agreement. Pursuant to that agreement, the defendant pled guilty to one count of attempted first degree murder and agreed to cooperate in the prosecution of her codefendant, Bailey Castigliola. In addition to reducing the charge to attempt, the State agreed to a sentence of 21 years in prison, to be served at 85%, and dismissed three unrelated misdemeanor cases that were pending against the defendant.

¶ 6       After the circuit court ascertained that the defendant's plea was knowing and voluntary, the State presented a factual basis for the plea. Witnesses would testify that on December 28, 2020, the defendant and Castigliola picked up Richard Truett at his home and all three entered a vehicle with Castigliola driving, Truett in the front passenger seat, and the defendant in the back seat. While in the vehicle, an argument ensued. State witnesses would further testify that during the course of that argument, the defendant took a substantial step toward murdering Truett and that Castigliola stabbed Truett in the leg, causing his death. Finally, witnesses would testify that

2

Truett's body was found in Indiana on April 7, 2021. The trial court accepted the defendant's plea and sentenced her in accordance with the agreement.

¶ 7 On September 11, 2023, the defendant filed her first collateral challenge to the judgment of conviction, a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)). The defendant asserted that she was "now allowed to introduce evidence that was withheld from the court or introduced as mitigating factors at the time of trial or sentencing." However, she did not identify or describe the evidence she wished to present. The defendant further asserted that she might have received a lighter sentence if the unspecified evidence had been before the court at the time of trial or sentencing. She requested that the judgment be vacated.

¶ 8 The State filed a motion to dismiss the defendant's petition on September 20, 2023, arguing that the defendant did not assert any grounds for relief under section 2-1401 and additionally failed to identify any pertinent evidence. A letter from the defendant dated October 4, 2023, was filed with the court on October 10, 2023. In it, the defendant indicated that she had filed the wrong motion and asked whether she could "switch motions" at her upcoming status hearing or whether she needed to file a motion to reconsider sentence. The State appeared at an October 25, 2023, status hearing, but the defendant did not. The circuit court indicated during the hearing that it would grant the State's motion to dismiss, noting that the defendant sent a letter saying she had filed the wrong motion and that what she really wanted to file was a motion to reconsider her sentence. On the same day, the circuit court dismissed the defendant's petition in a docket entry.

¶ 9 The defendant's next collateral challenge consisted of a *pro se* petition for postconviction relief filed on October 31, 2023. The defendant alleged that she received ineffective assistance of counsel and was subject to cruel and unusual punishment. She further alleged that unspecified

3

documents were not submitted to the circuit court. The following day, the circuit court dismissed the postconviction petition in a docket entry with leave to file an amended petition.

¶ 10 The defendant did not file an amended postconviction petition. Instead, she filed an appeal, which this court subsequently dismissed for lack of jurisdiction. We found that we lacked jurisdiction to consider the dismissal of the defendant's petition for relief from judgment because it was not mentioned in her notice of appeal. We likewise found that we lacked jurisdiction to consider the dismissal of the defendant's postconviction petition. We explained that because the circuit court granted the defendant leave to file an amended postconviction petition, the dismissal of that petition did not constitute a final and appealable order. *People v. Ingram*, No. 5-23-1275, ¶¶ 9-11 (June 3, 2025) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 11 On January 13, 2025, while the defendant's appeal was pending, she filed the petition for relief from judgment at issue in this appeal pursuant to section 2-1401(b-5) of the Code (735 ILCS 5/2-1401(b-5) (West 2024)). The preprinted form she used includes a request that the circuit court "reopen the sentencing proceedings and reduce the original sentence imposed." The form also contains an allegation that there is "substantial evidence of domestic violence and/or gender-based violence" against the defendant that is material, noncumulative, and of such a conclusive character that it would likely change the original sentence.

¶ 12 Instead of describing the evidence of domestic violence and/or gender-based violence in the space provided on the form itself, the defendant attached several exhibits and an affidavit. The exhibits consist of numerous documents related to criminal prosecutions of her former husband, Rolando Vasquez, for incidents of battery against the defendant between April 2004 and May 2016 and an August 2024 mental health progress report indicating that the defendant had been diagnosed

4

with post-traumatic stress disorder (PTSD). In the defendant's three-page affidavit, she described the history of domestic violence during her marriage. She concluded by stating as follows:

"I was diagnosed with PTSD. PTSD does affect a way a person reacts to violent situations. I cannot recall most of the night after my co-defendant stabbed Richard Truitt [*sic*]. I went into fight or flight mode and blacked out. I ask the court to reconsider my charge and find me not guilty."

¶ 13 On January 14, 2025, the State filed a motion to dismiss, arguing that, under the Illinois Supreme Court's holding in *People v. Wells*, 2023 IL 127169, ¶ 41, "the relief set forth in subsection (b-5) excludes petitioners who are sentenced pursuant to fully negotiated plea agreements," as the defendant was in this case. On January 22, 2025, the State filed a supplemental motion to dismiss, acknowledging that a recent amendment expressly makes subsection (b-5) relief available to defendants who were sentenced pursuant to fully negotiated plea agreements. See Pub. Act 103-968, § 5 (eff. Jan. 1, 2025) (amending 735 ILCS 5/2-1401(b-5)). The State argued, however, that the defendant's petition should be dismissed because she requested that her conviction be vacated, relief that is not available under section 2-1401(b-5). See 735 ILCS 5/2-1401(b-5) (West 2024).

¶ 14 The matter proceeded to a hearing on January 31, 2025. The defendant requested an evidentiary hearing on her petition for relief from judgment. She argued as follows:

"I have medical evidence that I just received recently that shows the domestic abuse from me falling down the steps. I've been diagnosed with PTSD. I have X-rays. I'm getting ready to get sent out for MRIs. I'm having therapy on my neck at the time that I speak. Mentally, physically, emotionally, I have all of that, and it lasts for years."

5

¶ 15    The State first argued that the defendant's petition requested relief that is not available under section 2-1401(b-5) of the Code. Although the State acknowledged that the preprinted form petition asked the circuit court to reopen sentencing, it argued that in the defendant's own words, she asked the court to "reconsider [her] charge and find [her] not guilty."

¶ 16    The State next argued that the defendant did not meet her burden of alleging facts that would make her eligible for sentencing relief under section 2-1401(b-5). The State noted that the defendant must establish that the domestic abuse she experienced in her past was related to the crime at issue and argued that the allegations of her petition do not satisfy this requirement.

¶ 17    The State further noted that the defendant must also establish that the evidence she seeks to present is of such a conclusive character that it would likely change the original sentence. In arguing that the defendant could not satisfy this requirement, the State compared the possible penalties the defendant faced under the circumstances of this case with the sentence she ultimately received. The State pointed out that the sentencing range for murder is 20 to 60 years with an extended-term sentence of up to 100 years or natural life in prison if the murder was found to be committed in a cold, calculated, and premeditated manner, as the State alleged here. The State further noted that a murder sentence must be served at 100%. The State emphasized that the plea agreement allowed the defendant to serve a 21-year sentence at 85%.

¶ 18    The State then proffered the following facts about the underlying offenses: The State noted that the defendant admitted to police that she choked the victim while her codefendant stabbed him in the leg and that they dumped his body in a field. When the investigating officer asked the defendant whether Truett passed out while she was choking him, she replied, "A little bit, and he came back, and then he did again. I just choked him, chokehold, tap out, you know, like [Ultimate

Fighting Champion]." The State argued that in view of these facts, no lighter sentence would have been likely.

¶ 19    In rebuttal, the defendant emphasized that she was only asking for an evidentiary hearing to prove "this cause that caused [her] unreasonable actions." She stated, "I'm not asking for exoneration, just a chance to present my evidence and profound problems."

¶ 20    Announcing its ruling from the bench, the circuit court first found that the defendant failed to show how the domestic violence she alleged related to the crimes with which she was charged. With respect to the requirement that the evidence be so conclusive that the court would change its mind regarding the sentence imposed, the court stated, "You were given quite a deal, as I understand it, from my review of the case, the proffer that's been made by the State, and I cannot make that conclusion here today." The circuit court thus indicated it would deny the defendant's petition. On the same date, the circuit court denied the defendant's petition in a docket entry.

¶ 21    The defendant filed a late notice of appeal on April 14, 2025. On the same date, this court entered an order appointing OSAD to represent the defendant and granting OSAD 30 days to show cause why the appeal should not be dismissed for lack of jurisdiction. In response, OSAD filed a motion for leave to file a late notice of appeal on the defendant's behalf, which this court granted. OSAD subsequently filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). This court entered an order allowing the defendant time to file any *pro se* briefs, memoranda, or other documents showing why her appeal has merit. The defendant did not file a response within the time allotted.

¶ 22                                    II. ANALYSIS

¶ 23    The OSAD attorney assigned to the defendant's case identified the following three potential issues: (1) whether the circuit court complied with the requirements of procedural due

7

process before dismissing the petition, (2) whether the defendant's petition set forth an arguably meritorious claim for relief, and (3) whether the defendant's petition was timely filed. However, counsel concluded that all three issues lacked arguable merit. We agree.

¶ 24    The first issue considered by OSAD was whether the defendant was afforded procedural due process. Section 2-1401 of the Code provides a statutory mechanism for seeking relief from a final judgment more than 30 days after it is entered. *People v. Laugharn*, 233 Ill. 2d 318, 322 (2009). Relief from judgment under section 2-1401 is a civil remedy that applies in both civil and criminal proceedings. *People v. Stoecker*, 2020 IL 124807, ¶ 18. "Illinois courts have recognized that basic notions of fairness dictate that a petitioner be afforded notice of, and a meaningful opportunity to respond to, any motion or responsive pleading [filed] by the State." *Id.* ¶ 20. Indeed, both the federal and state constitutions guarantee the right to procedural due process, which entitles an individual the " 'opportunity to be heard at a meaningful time and in a meaningful manner.' " *Id.* ¶ 17 (citing *In re D.W.*, 214 Ill. 2d 289, 316 (2005)). Protecting a petitioner's right to procedural due process in the context of postjudgment proceedings is a matter "of utmost importance." *Id.* ¶ 22. Whether a petitioner has been afforded due process is a question of law subject to *de novo* review. *Id.* ¶ 17.

¶ 25    Due process is a flexible doctrine, and the procedures needed to satisfy its requirements are not the same in all circumstances. *Id.* In the context of petitions for relief from judgment, a circuit court deprives a petitioner of due process if it dismisses the petition without first giving the petitioner a reasonable opportunity to respond to the State's motion to dismiss. *Id.* ¶ 22.

¶ 26    Here, the record indicates that on January 14, 2025, the State sent the defendant a notice of the motion to dismiss it filed that date and a notice of the January 31 motion hearing. The State likewise sent the defendant a notice of its amended motion on January 22, 2025, the same day that

8

the motion was filed. The defendant not only had actual notice of the State's motions and the hearing on those motions, but she also appeared at the hearing and presented arguments in opposition to the State's motions. We thus find that the proceedings comported with the requirements of due process, and any argument to the contrary would lack merit.

¶ 27    OSAD next considered whether the defendant's petition raised an arguably meritorious claim. To obtain relief under section 2-1401, the petitioner must demonstrate by a preponderance of the evidence the existence of a meritorious claim or defense, due diligence in attempting to present that claim during the original proceeding, and due diligence in initiating the 2-1401 petition. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). Subsection (b-5) specifically allows a petitioner to seek modification of his or her sentence "without affecting the conviction." 735 ILCS 5/2-1401(b-5) (West 2024). To establish a meritorious claim under this subsection, the petitioner must demonstrate by a preponderance of the evidence that (1) he or she was convicted of a forcible felony; (2) his or her participation in the offense at issue was related to having been the victim of previous domestic violence or gender-based violence; (3) there is substantial evidence of domestic violence or gender-based violence against the petitioner that was not presented at the sentencing hearing; and (4) this evidence is material, not cumulative of evidence offered at the sentencing hearing, and "of such a conclusive character that it would likely change the sentence imposed by the original trial court." *Id.* We review *de novo* the circuit court's decision to dismiss a 2-1401 petition. *People v. Matthews*, 2016 IL 118114, ¶ 9; *Laugharn*, 233 Ill. 2d at 322.

¶ 28    OSAD concluded that the defendant's petition in this case lacked arguable merit because she was unable to satisfy two of the requirements for relief—specifically, the allegations of her petition did not establish that her participation in the murder of Truett was related to the domestic

9

violence perpetrated against her by her former husband, and she did not establish that the evidence was of such a conclusive character that it likely would have changed the sentence imposed. We agree.

¶ 29 With respect to the requirement of establishing that the crime was related to the previous domestic violence or gender-based violence, the defendant alleged that she was diagnosed with PTSD and that PTSD affects the "way a person reacts to violent situations." However, she did not allege that she was faced with a violent situation prior to choking Truett while her codefendant stabbed him, much less present evidence of that fact. Nor did she explain how her PTSD affected her behavior as it relates to the night of the murder. She thus failed to satisfy a statutory requirement for relief. See 735 ILCS 5/2-1401(b-5)(2) (West 2024).

¶ 30 The defendant likewise failed to demonstrate that the evidence of domestic abuse she sought to introduce was "of such a conclusive character that it would likely change the sentence imposed by the original trial court." See *id.* § 2-1401(b-5)(5). As we discussed earlier, the State alleged in the charging instrument that the murder was committed in a cold, calculated, and premeditated manner. As such, she faced a potential sentence of natural life in prison or a determinate sentence of up to 100 years, which would have to be served at 100%. 730 ILCS 5/5-4.5-20 (West 2020) (providing that the sentencing range for first degree murder is 20 to 60 years with an extended-term sentencing range of 60 to 100 years); *id.* § 5-8-1(b-5)(8) (authorizing a sentence of natural life in prison when a murder is committed in a cold, calculated, and premeditated manner in accordance with a plan, design, or scheme to take a human life); *id.* § 3-6-3(a)(2)(i) (providing that sentence credit is not available against a sentence for first degree murder). However, the plea agreement reduced the charge to attempted murder, thus allowing the defendant to serve the agreed-upon 21-year sentence at 85%. See *id.* § 3-6-3(a)(2)(ii) (allowing up

10

to 4.5 days per month sentence credit for inmates convicted of attempt to commit first degree murder). In ruling on the defendant's 2-1401 petition, the circuit court concluded that, in view of the circumstances of the underlying offense, this was "quite a deal" and the evidence of domestic abuse by the defendant's former husband would not have changed the sentence. Because the defendant thus failed to satisfy two of the statutory requirements for establishing a meritorious claim under section 2-1401(b-5) of the Code, we conclude that her petition did not set forth an arguably meritorious claim and that any argument to the contrary on appeal would lack merit.

¶ 31    Finally, OSAD considered the issue of whether the defendant's petition was timely filed. See 735 ILCS 5/2-1401(c) (West 2024) (providing that a petition for relief from judgment must be filed within two years of the judgment unless the defendant was under a legal disability or the basis for relief was fraudulently concealed). However, the circuit court reached the merits of the defendant's petition and did not dismiss the petition on the ground of untimeliness. Therefore, we need not consider this issue.

¶ 32                                III. CONCLUSION

¶ 33    For the foregoing reasons, we grant OSAD's motion to withdraw and affirm the order of the circuit court dismissing the defendant's petition for relief from judgment.


¶ 34    Motion granted; order affirmed.