**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180344-U

Order filed March 17, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0344 Circuit No. 01-CF-344 |
| | ) | |
| ANGELA J. WELLS, | ) ) | The Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1   *Held*:   The trial court's error of failing to give defendant a reasonable opportunity to respond to the State's motion to dismiss her section 2-1401(b-5) petition, which violated defendant's right to due process, could not be said to be harmless.

¶ 2   Pursuant to a negotiated plea agreement, defendant, Angela Wells, pled guilty to first-degree murder (720 ILCS 5/9-1(a)(2) (West 2000)) and was sentenced to 40 years of imprisonment. Defendant filed a petition for relief from judgment pursuant to section 2-1401(b-

5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(b-5) (West 2016)).[1] The State filed a motion to dismiss the petition. The trial court entered an order dismissing defendant's petition on the merits. Defendant appeals, arguing the trial court violated her right to due process by granting the State's motion to dismiss without giving her the opportunity to respond. We vacate the trial court's judgment and remand for further proceedings.

¶ 3                                I. BACKGROUND

¶ 4        Defendant and her husband, Ronald Wells, were charged with three counts of first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2000)) and one count of concealment of a homicidal death (720 ILCS 5/9-3.1(a) (West 2000)) in connection with the death of Jamie Weyrick.

¶ 5                                A. Guilty Plea

¶ 6        On October 29, 2001, defendant entered a negotiated guilty plea to one count of first-degree murder in exchange for a sentence of 40 years in prison and the dismissal of the remaining charges. Under the plea agreement, defendant also agreed to testify truthfully at Ronald's trial.

¶ 7        The factual basis presented for defendant's plea was as follows. On March 18, 2001, Weyrick's mother reported 20-year-old Weyrick missing, indicating that he was last seen on March 14, 2001, at 8:00 p.m. That day, Weyrick had received an income tax refund check for over $2000, which he cashed. Weyrick's girlfriend reported last seeing Weyrick with Ronald at 4:00 p.m. on March 15, 2001, in the area of Flora Avenue and Elizabeth Street (presumably in Peoria, Illinois). Police were informed that someone had used Weyrick's ATM card to withdraw

---

[1] In the petition, defendant requested for her sentence to be reduced. On appeal, she clarified that her request for sentencing relief included a request for her guilty plea to be vacated.

2

$10 from his account on March 16, 2001. Police interviewed defendant on April 11, 2001. She indicated that she had seen Wyerick when she picked up Ronald in the area of Flora Avenue and Elizabeth Street on March 15, 2001. On April 14, 2001, police searched defendant and Ronald's home and recovered Weyrick's body from the backyard. Police interviewed defendant again that evening, at which time she stated that Weyrick was already dead when she came home on the night of March 15, 2001, and that Ronald had killed Weyrick. In another interview on April 16, 2001, defendant stated that she was home with her four children when Ronald arrived with Weyrick on the evening of March 15, 2001. Ronald told defendant that he intended to kill Weyrick because Weyrick had a large sum of money. Defendant pleaded with Ronald not to do it, but Ronald ignored her and went upstairs to where Weyrick was waiting. Defendant heard a struggle upstairs. Weyrick ran down the stairs with Ronald in pursuit. Ronald stabbed Weyrick until Weyrick appeared dead. Ronald instructed defendant to help him carry Weyrick downstairs to the basement freezer. Ronald took money from Weyrick and left. Defendant heard noises coming from the freezer and discovered that Weyrick was not deceased, so she hit Weyrick with a hammer. Weyrick continued to breath, so she stabbed him. Defendant summoned her 13-year-old stepson, Destin, to the basement and instructed him to sit on the freezer. They sat there a long time until Weyrick was deceased. Ronald returned home the following day. On that next day, Weyrick's body was removed from the freezer and buried in the backyard. If the case went to trial, the State would call Destin (Ronald's son) to testify. Destin's testimony would corroborate certain aspects of defendant's statement, including that Ronald came home with Weyrick, they went upstairs, there was a struggle, Weyrick was placed in the freezer, defendant summoned Destin, and Destin saw defendant "inflict injuries on Mr. Wells [sic]." An autopsy performed on

3

April 16, 2001, revealed that the cause of Weyrick's death was multiple blunt force injuries, sharp force injuries, and asphyxia.

¶ 8        The trial court found a factual basis for defendant's guilty plea. Defendant was convicted of one count of first-degree murder (count III) and the remaining three counts of the indictment were dismissed pursuant to the plea agreement.

¶ 9        The trial court then conducted a sentencing hearing. The parties waived the presentence investigation report. The State noted defendant had prior misdemeanor convictions for possession of cannabis and possession of drug paraphernalia. The prosecutor indicated that the victim's family was opposed to the 40-year sentence offered under the plea agreement and, instead, would have preferred that defendant receive a life sentence. Defendant's attorney noted for the record that the defense's expert, a board-certified psychiatrist, opined that defendant was fit and that there was no basis in regard to a major psychiatric illness that would support any type of insanity defense. In allocution, defendant apologized to the victim's family. The trial court sentenced defendant to 40 years of imprisonment in accordance with the plea agreement, noting that a condition of the plea agreement was that defendant truthfully testify at Ronald's trial.

¶ 10                                B. Post-Plea Filings

¶ 11        On November 27, 2001, a *pro se* motion to withdraw guilty plea was filed in defendant's name. At a hearing reviewing the motion, defendant's counsel advised the trial court that neither the signature on the motion nor on the supporting affidavit were defendant's signatures and that the documents had been prepared and filed without any input, consent, knowledge, or authority from defendant. Defendant's counsel stated that defendant had told him that the facts alleged were not true and she did not wish to withdraw her guilty plea. Defendant's counsel also indicated that defendant wanted to have no contact or input whatsoever from Ronald, whom she

4

believed was the author of the documents. Defendant confirmed to the trial court that she had no interest in withdrawing her guilty plea or modifying her sentence. The trial court struck the motion.

¶ 12          In 2006, a power of attorney was filed, purportedly signed by defendant, which gave Ronald the authority to represent defendant. Thereafter, on August 18, 2006, Ronald filed a section 2-1401 petition on defendant's behalf. On September 5, 2006, the trial court found Ronald was not authorized to practice law and had no authority to file pleadings on behalf of anyone other than himself. The trial court struck the petition without prejudice. Ronald filed a motion to reconsider, which was denied. Around the same time in September 2006, Ronald also submitted additional petitions to be filed on defendant's behalf, which were also stricken.

¶ 13          On October 10, 2006, defendant filed both a *pro se* postconviction petition and a *pro se* petition for relief from judgment (filed by and through Ronald but also signed by defendant). On August 13, 2007, the trial court granted the State's motion to dismiss the petitions on the grounds of untimeliness. This court affirmed. *People v. Wells*, No. 3-07-0632 (2008) (unpublished order under Supreme Court Rule 23). On September 20, 2007, the defendant mailed the trial court a motion to reconsider its order of August 13, 2007. On June 17, 2008, the trial court struck the motion to reconsider because defendant had filed a notice of appeal and the motion was untimely. On appeal, this court affirmed, concluding the trial court lacked jurisdiction to rule on the merits of the motion. *People v. Wells*, No. 3-08-0545 (2009) (unpublished order under Supreme Court Rule 23).

¶ 14          On April 15, 2009, the trial court held joint a hearing on defendant and Ronald's joint petition for relief filed on April 1, 2009, and Ronald's separate, but similar, petition filed on October 22, 2008, in which they requested that the trial court vacate its order of June 17, 2008.

The trial court interpreted the petitions as motions to reconsider, concluded it lacked jurisdiction (due to Ronald's pending appeal and defendant's appeal having already been decided), and dismissed the petitions with prejudice. This court affirmed. *People v. Wells*, No. 3-09-0502 (2009) (unpublished order under Supreme Court Rule 23).

¶ 15     On August 3, 2009, defendant filed another petition for relief from judgment, primarily claiming that her conviction was based on the perjured testimony of Destin. Defendant alleged that Destin was threatened and coerced into testifying against Ronald and into making false statements against her. The petition was supported by Destin's affidavit. On July 5, 2011, the trial court denied the petition.

¶ 16     On May 20, 2015, defendant placed *pro se* petition for relief from judgment (and a writ of *habeas corpus*) in the prison mail system for filing, along with a certificate of service indicating that she had also mailed those documents to the circuit clerk and to the State's Attorney's office. The documents were filed-stamped on June 15, 2015. In her *pro se* petition for relief from judgment, defendant alleged that her minor children were illegally interrogated by police in violation of defendant's fourth amendment rights. On August 18, 2105, the trial court found that it did not have jurisdiction to address the petition because defendant did not properly serve the State's Attorney's office with a notice of filing. The trial court denied the petition without prejudice.

¶ 17                    C. Section 2-1401(b-5) Petition for Relief

¶ 18     In December 2017, defendant mailed to the circuit clerk for filing a *pro se* petition for relief from judgment pursuant to section 2-1401(b-5) of the Code (735 ILCS 5/2-1401(b-5) (West 2016)). The petition was file-stamped on January 3, 2018.

¶ 19        Section 2-1401(b-5) of the Code provides that a movant may present a meritorious claim for relief pursuant to section 2-1401 if the allegations in the petition establish each of the following by a preponderance of the evidence:

"(1) the movant was convicted of a forcible felony;

(2) the movant's participation in the offense was related to him or her previously having been a victim of domestic violence as perpetrated by an intimate partner;

(3) no evidence of domestic violence against the movant was presented at the movant's sentencing hearing;

(4) the movant was unaware of the mitigating nature of the evidence of the domestic violence at the time of sentencing and could not have learned of its significance sooner through diligence; and

(5) the new evidence of domestic violence against the movant is material and noncumulative to other evidence offered at the sentencing hearing, and is of such a conclusive character that it would likely change the sentence imposed by original trial court." 735 ILCS 5/2-1401(b-5) (West 2016).

¶ 20        In her petition, defendant noted the crime of first-degree murder was a forcible felony. She also described her history of having been a victim of domestic violence as perpetrated by Ronald. Defendant contended that the crime was related to the domestic violence because she acted out of fear and compulsion that had been "instilled in [her] from [her] home life" and specifically out of fear from "intimidation by the co-defendant/husband of physical violence [she] would suffer and threats of peril." She also contended that she was previously unaware of the significance of the domestic violence and the conclusive character of the domestic violence

7

evidence. Her petition included numerous attached exhibits, including an affidavit in which she averred that she was "bound by domestic violence since 1990 and was afraid to speak out." Medical records attached to the petition indicated defendant had suffered a fractured toe, a sprained knee, and a fractured finger, which were attributed to working at a nursing home and "stepping in hole." A DCFS form from April 2001 included a statement by defendant's father, indicating that Ronald had physically abused defendant for years but she would not leave him. In what appears to be a request to the then-governor of Illinois for commutation of her sentence, defendant acknowledged that she could have called police at the time of the murder but she was afraid that Ronald was coming back and believed that she "would have met the same fate as [her] victim because imminent bodily harm would have been inflicted upon [her] if [she] didn't do what [her] co-defendant/husband said." Defendant also attached letters from Ronald, in which he acknowledged beating defendant and in which he made negative remarks about defendant.

¶ 21        On February 15, 2018, the trial court gave the State 30 days to respond to defendant's petition. On March 14, 2018, the State filed a motion to dismiss and a certificate of service. The certificate of service indicated that the State served the motion on defendant at the Logan Correctional Center by regular mail the same day. In section I of its motion to dismiss, the State argued that section 2-1401(b-5) was not applicable to defendant because there was no "sentencing" as referred to in subsections (b-5)(3) and (b-5)(5) and defendant waived any claim that her participation in the offense was related to being a victim of domestic violence because she had entered a fully negotiated guilty plea and did not raise the issue in a postplea motion. In section II of the motion, the State argued the petition was untimely and section 2-1401(b-5) did not apply "retroactively" to defendant where that subsection did not exist at the time of defendant's plea. In section III of its motion, the State argued defendant's petition was patently

8

without merit because defendant failed to show that defendant was a victim of domestic abuse where medical records documented non-abuse reasons for her injuries and defendant failed to show that her participation in the murder was related to being a victim of domestic abuse where the evidence showed that defendant stabbed Weyrick out of her fear of Weyrick and not out of a fear of Ronald.

¶ 22   On March 21, 2018, seven days after the State filed its motion to dismiss and mailed the motion to defendant in prison, without a response from defendant, the trial court entered a written order dismissing defendant's section 2-1401(b-5) petition "on the merits." The trial court entered the order "[u]pon consideration of the pleadings, review of the file contents and the procedural history" of the case. The record gives no indication that a hearing on the motion took place or that defendant was given notice of a proceeding at which the trial court ruled on the State's motion to dismiss.

¶ 23   In its order dismissing defendant's section 2-1401(b-5) petition, the trial court indicated that the petition was "in essence a motion to reduce sentence," which is generally barred after 30 days from the entry of a guilty plea. The trial court also found relief pursuant to sections "2-1401 and 2-1401(b-5) [was] not available to the defendant for those reasons listed in the State's motion to dismiss at section I and II thereof." The trial court further found a lack of due diligence in defendant presenting her claim under section 2-1401 where subsection (b-5) had become effective on January 1, 2016, but defendant did not file her claim until almost two years later. The trial court also noted that defendant had filed a petition for relief from judgment on June 15, 2015, which was denied without prejudice for lack of service on the State but defendant did not timely refile her petition thereafter. The trial court indicated in its written order that the petition

9

was "dismissed on the merits, no legal basis existing to support same" and "[t]his is a final judgment."

¶ 24    Defendant filed a motion to reconsider. In her motion to reconsider, defendant acknowledged that a petition brought pursuant to section 2-1401 must be brought within two years after the entry of the order or judgment. She contended, however, that it would be "fundamentally unfair" to deny her the ability to file a petition for relief from judgment pursuant to section 2-1401(b-5) in light of the large role domestic violence played in her conviction. She stated in the motion there had been "compulsion and duress" from an intimate partner, noting that Ronald had a very extensive criminal history and a domestic abuse charge in his background. Defendant requested that the trial court reinstate her petition and grant her a hearing to present mitigating evidence and subpoena witnesses. The trial court denied defendant's motion to reconsider.

Defendant appealed.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, defendant argues that her petition set forth a meritorious claim for relief from judgment under section 2-1401(b-5) of the Code. She also contends that her right to due process was violated where the trial court failed to give her an opportunity to respond to the State's motion to dismiss her petition. The State acknowledges that the trial court prematurely dismissed defendant's petition, thereby denying defendant due process, but contends that the error was harmless because her petition had no merit.

¶ 27    Section 2-1401 establishes a statutory procedure that allows for the vacatur of a final judgment that is older than 30 days. 735 ILCS 5/2-1401 (West 2016). "[A] section 2-1401 petition can present either a factual or legal challenge to a final judgment or order." *Warren*

10

*County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. A fact-dependent

challenge is "resolved by considering the particular facts, circumstances, and equities of the

underlying case." *Id.* ¶ 50. In such fact-dependent challenges to a final judgment or order, the

petitioner "must set forth specific factual allegations supporting each of the following elements:

(1) the existence of a meritorious defense; (2) due diligence in presenting this defense; and (3)

due diligence in filing the section 2-1401 petition for relief." (Emphasis omitted.) *Id.* ¶ 51.

"When the facts supporting the section 2-1401 petition are challenged by the respondent, a full

and fair evidentiary hearing should be held." *Id.* "[T]he trial court may also consider equitable

considerations to relax the applicable due diligence standards under the appropriate limited

circumstances." *Id.* "The quantum of proof necessary to sustain a section 2-1401 petition is a

preponderance of the evidence, and the circuit court's ultimate decision on the petition is

reviewed for an abuse of discretion." *Id.* If a section 2-1401 petition raises a purely legal issue

that does not involve a factual dispute and a judgment is entered on the pleadings or the petition

is dismissed for failure to state a cause of action, the reviewing court applies a *de novo* standard

of review. *Id.* ¶¶ 47-48.

¶ 28       In this case, the trial court ruled on the State's motion to dismiss seven days after it was

mailed to defendant and filed with the court, without giving defendant an opportunity to respond.

The State concedes that this premature dismissal of defendant's section 2-1401(b-5) petition was

a violation of defendant's right to due process. See *People v. Stoecker*, 2020 IL 124807, ¶ 20

("Illinois courts have recognized that basic notions of fairness dictate that a petitioner be

afforded notice of, and a meaningful opportunity to respond to, any motion or responsive

pleading by the State"); *People v. Rucker*, 2018 IL App (2d) 150855 (petitioner was deprived of

his right to due process when the trial court granted the State's motion to dismiss his petition for

relief from judgment before he had an opportunity to meaningfully respond to the State's motion); *People v. Bradley*, 2017 IL App (4th) 150527, ¶ 16 ("due process does not allow a trial court to grant a motion to dismiss a complaint without allowing the opposing party notice and a meaningful opportunity to be heard"). The State contends, however, that the error was harmless because defendant failed to meet the timeliness requirement set forth in section 2-1401(c) of the Code for filing the petition. The State further contends, alternatively, that the error was harmless because there is "no chance" the trial court would have changed the imposed sentence of 40 years of imprisonment due to the "ghoulish and heinous nature" of the crime.

¶ 29 The procedural due process violation in this case—the trial court failing to give defendant a reasonable opportunity to respond to the State's dispositive motion and notice prior to the dismissal of her petition—is subject to a harmless error review. *Stoecker*, 2020 IL 124807, ¶¶ 23, 25. The impact of such an error is harmless if the claim was "procedurally defaulted and patently incurable as a matter of law and [if] no additional proceedings would have enabled [the petitioner] to prevail on [the] claim for relief." *Id.* ¶ 26.

¶ 30 Under section 2-1401(c), a petition for relief from a judgment must be filed not later than two years after the entry of the order or judgment. 735 ILCS 5/2-1401(c) (West 2016). Section 2-1401, however, provides for an exception to the time limitation for legal disability and duress or if the ground for relief was fraudulently concealed. 735 ILCS 5/2-1401(c) (West 2016) ("[t]ime during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years"). Also, a void judgment may be attacked at any time through a section 2-1401 petition. *People v. Dodds*, 2014 IL App (1st) 122268, ¶ 19.

¶ 31        Here, the section 2-1401(b-5) petition was filed over 14 years after the expiration of the two-year limitation period under the statute. The State raised the two-year limitation period for filing a section 2-1401 petition in its motion to dismiss. See *People v. Pinkonsly*, 207 Ill. 2d 555, 562-63 (2003) (timeliness under section 2-1401 is an affirmative defense). Defendant does not contend that the judgment entered in 2001 was void. See *Stoecker*, 2020 IL 124807, ¶ 28 (there are only two circumstances in which a judgment will be considered void: (1) when a court lacked personal or subject-matter jurisdiction; or (2) when it is based on a statute that is facially unconstitutional and void *ab initio*). Rather, defendant contends, in essence, that it would be inequitable to apply the two-year limitation period to her subsection (b-5) petition because she could not raise a subsection (b-5) claim in a section 2-1401 petition prior to January 1, 2016 (the effective date of subsection (b-5)) and she did not appreciate the impact of the domestic violence. She also contends she was diligent in raising this claim and in filing the petition because, as she averred in her petition, she was unaware of the mitigating nature of her history of domestic violence. Defendant additionally contends that her petition was timely because she filed it within two years of subsection (b-5) becoming effective on January 1, 2016.

¶ 32        At this juncture, we cannot say that the trial court's error in prematurely dismissing defendant's 2-1401(b-5) petition "on the merits" as a final order, without giving defendant an opportunity to reasonably respond to the State's motion to dismiss, was harmless. See *Stoecker*, 2020 IL 124807, ¶ 26. Defendant was deprived of an opportunity to request to amend her petition or to respond to the State's motion to dismiss so that she could assert and develop the above arguments. See *Warren County*, 2015 IL 117783, ¶¶ 50-51 (in resolving a fact-dependent section 2-1401 petition, the trial court must consider the particular facts, circumstances, and equities of the underlying case; "the trial court may also consider equitable considerations to relax the

13

applicable due diligence standards \*\*\* ”); *People v. Cathey*, 2019 IL (1st) 153118, ¶ 18 (the application of the section 2-1401(c) limitations period "requires a court to make fact determinations because exceptions are allowed for delays attributable to disability, duress, or fraudulent concealment"). We, therefore, vacate the circuit court's order dismissing defendant's section 2-1401(b-5) petition on the merits and remand for further proceedings.

¶ 33                                        III. CONCLUSION

¶ 34        For the reasons stated, the judgment of the circuit court of Peoria County is vacated, and the cause is remanded for further proceedings.

¶ 35        Vacated and remanded.