NOTICE

Decision filed 02/18/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240546-U

NO. 5-24-0546

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Edgar County. |
| | ) | |
| v. | ) | No. 14-CF-121 |
| | ) | |
| FRED E. COX, | ) | Honorable |
| | ) | Matthew L. Sullivan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice McHaney and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The circuit court did not err in dismissing the defendant's petition for relief from judgment where the petition was untimely and the defendant's two claims were barred by *res judicata* and lacked evidentiary support, respectively. As any arguments to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2  Defendant Fred E. Cox was found guilty of predatory criminal sexual assault of a child and was sentenced to 24 years in the Illinois Department of Corrections (IDOC). He appeals from the dismissal of his petition for relief of judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)). Cox's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit. On that basis, OSAD has filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support of that motion.

1

¶ 3       This court gave Cox an opportunity to file a *pro se* brief, memorandum, or other document

explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit.

However, he has not taken advantage of that opportunity. This court has examined OSAD's *Finley*

motion and the accompanying memorandum of law, as well as the entire record on appeal, and has

concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to

withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 4                                    BACKGROUND

¶ 5                                A. Charges and Trial

¶ 6       On July 28, 2014, Cox was charged with predatory criminal sexual assault of a child, in

violation of section 11-1.40(a)(1) of the Criminal Code of 2012 (720 ILCS 5/11-1.40(a)(1) (West

2012)), stemming from his committing an act of sexual penetration against H.V., a minor under

13 years of age. Cox's jury trial took place on December 15 and 16, 2015.

¶ 7       In addition to other testimony not relevant to this appeal, H.V. testified at trial. She testified

she lived with her mother, E.R., and E.R.'s boyfriend, Robert B. On the evening of July 11, 2014,

H.V., who was 10 at the time, was sleeping over at her friend G.C.'s house. G.C. is Cox's daughter.

The girls got ready for bed around 9 p.m. Each girl slept on one side of a double recliner in the

living room. H.V. believed G.C.'s parents had already gone to bed. Sometime during the night,

H.V. was awakened by Cox, who was taking off her underwear. H.V. said, "I tried to fight him

and, you know, punch and kick. But he took his—his penis out of his boxers, like in the hole, and

he put his penis into my vagina."

¶ 8       When she got home the next day, H.V. told E.R. about the incident. Robert B. came home

soon after and called the police. Robert B. and E.R. took H.V. to Sarah Bush Lincoln Health Center

for examination. They then went to the Children's Advocacy Center of East Central Illinois where she was interviewed by Edgar County Sheriff's Sergeant Adam Rhoads.

¶ 9    After considering the evidence, arguments of counsel, and the trial court's instructions of the law, the jury found Cox guilty of predatory criminal sexual assault of a child.

¶ 10                    B. Posttrial Motion and Sentencing

¶ 11    On February 23, 2016, Cox filed a posttrial motion and on March 14, 2016, Cox filed a motion pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2014)), requesting the sentencing hearing be continued until DNA testing on evidence was complete. In the latter motion, counsel explained that in July 2014, Cox submitted a DNA sample to law enforcement to aid their investigation and attempt to match his DNA with that found on H.V.'s underwear. Counsel reminded the court that at Cox's December 2015 jury trial, Sergeant Rhoads testified that DNA testing had not been concluded before the start of trial. Counsel stated that on or about February 22, 2016, the State produced lab results which contained evidence of semen on H.V.'s underwear, but testing to determine whether Cox's DNA matched that particular sample had still not been completed. Counsel argued that pursuant to section 116-3, Cox was entitled to request that DNA testing be completed where identity was at issue, and that sentencing should be held in abeyance until then.

¶ 12    The court granted the continuance to allow the return of the DNA results. Soon thereafter, Cox filed a motion for leave to amend his motion for a new trial, alleging that DNA testing revealed that semen found on H.V.'s underwear did not match Cox but instead matched Robert B., H.V.'s mother's live-in boyfriend.

¶ 13    The hearing on Cox's posttrial motions began on August 24, 2016. At the posttrial hearing, Greg Metcalf, chief deputy of the Edgar County Sheriff's Office, testified that the nurse at the

3

hospital bagged H.V.'s clothing and gave it to him. A few hours later, he retrieved the underwear H.V. was believed to have worn on the night of the assault, which her mother provided to him. Metcalf sent this underwear to the crime lab for testing.

¶ 14    Karri Broaddus, a forensic scientist at the crime lab, testified that on July 11, 2016, she submitted a written report indicating she had tested several samples from H.V.'s underwear for DNA. One sample tested indicated the presence of semen, but microscopic sperm cells were not found. Broaddus described the indication as a weak positive and explained that the identified protein could have come from another bodily fluid. The profile found on that sample was a mixture of two males; the major profile matched Robert B., although it was a low amount of DNA, *i.e.*, a "weak positive," and not Cox.

¶ 15    But on a different tested sample from H.V.'s underwear, Cox could not be ruled out as a contributor of a minor DNA profile, as he matched at one single locus. Broaddus testified that there was no way to tell how long the tested samples had been present on the underwear when it was submitted to her.

¶ 16    E.R. testified that in July 2014, she lived with her daughter H.V. and her boyfriend, Robert B. E.R. testified that on the night H.V. slept over at the Coxes' house, E.R. and Robert B. had sexual relations. Thereafter, Robert B. "wipe[d] off" with a towel and put the towel in the laundry pile in the bathroom. Before H.V. went to the hospital the next day, she changed her clothes in the bathroom and put her dirty clothes in the laundry pile. When the police came over later that day to collect H.V.'s underwear, E.R. retrieved the underwear from the laundry pile. E.R. testified that H.V.'s underwear was close to the top of the pile where the dirty towel was.

¶ 17    In his argument on Cox's posttrial motion, defense counsel argued that the new evidence of the DNA test results from DNA found in H.V.'s underwear implicated Robert B. and excluded

Cox. Counsel argued that the new evidence was sufficient to warrant a new trial where it would potentially lead to a different verdict if presented to a jury.

¶ 18 The trial court denied Cox's motion for new trial and found the DNA testing results were insufficient to warrant a new trial where the case was not a "whodunnit," but rather a positive identification from a child complainant who was familiar with Cox and saw him as he assaulted her. Furthermore, the court found, the minute quantity that may have come from semen or some other bodily fluid and/or may have been transferred while in the dirty clothes pile was not sufficiently conclusive that it would probably change the result on retrial.

¶ 19 On September 23, 2016, the court sentenced Cox to 24 years in prison.

¶ 20                                   C. Direct Appeal

¶ 21 On direct appeal, Cox argued that: (1) the court erred by admitting his sexual misconduct in 1993 and 1994 against his preteen stepdaughter to show propensity; (2) the court erred in allowing the jury to have a certified copy of his 1994 conviction during deliberations; (3) the prosecutor committed misconduct during his closing argument; (4) the court erred in admitting the audio and video recording of Sergeant Rhoads' interview with H.V.; and (5) the court erred in denying his motion for a new trial on the basis of the newly discovered DNA evidence, which was sufficiently conclusive so as to change the result on retrial.

¶ 22 The Fourth District rejected these arguments and affirmed Cox's conviction. *People v. Cox*, 2019 IL App (4th) 160696-U.

¶ 23 In rejecting Cox's claim that the newly discovered DNA evidence was sufficiently conclusive to undermine confidence in the outcome of his trial, the Fourth District noted that at the hearing on Cox's posttrial motion, forensic scientist Broaddus testified that although semen was indicated on the underwear she examined, no sperm was microscopically identified, which

5

meant the indicator could have resulted from another bodily fluid. *Id.* ¶ 86. Furthermore, the court noted, Cox's DNA profile could not be excluded from two of the three samples from the underwear that were tested. The court also found that while the weak indicator from the semen sample matched Robert B. and not Cox, it was possible that Robert B.'s DNA could have been transferred to H.V.'s underwear while lying in the same dirty clothes pile. *Id.*

¶ 24                                  D. Postconviction Petition

¶ 25    On January 9, 2020, Cox filed a *pro se* postconviction petition. He alleged that his trial counsel was ineffective for, *inter alia*, failing to challenge the validity of the charging instrument where his charge simply referred to "a minor victim" without identifying her by name. Cox also repeated his allegation that the trial court erred in denying his motion for a new trial based on newly discovered evidence. Cox's petition was docketed and counsel was appointed.

¶ 26    On December 29, 2020, appointed counsel filed a "notice of compliance with the post-conviction hearing act." In the notice, counsel stated that she had reviewed the trial record, discovery, defendant's pleadings, and the direct appeal decision. Counsel stated that she had corresponded with Cox, and that she had conducted her own research. Counsel argued that all of the issues raised by Cox in his petition were raised on direct appeal and had, therefore, already been addressed by the appellate court. Counsel concluded that there had not been a substantial denial of Cox's constitutional rights and she would not be filing an amended or supplemental petition.

¶ 27    Counsel informed the court on March 4, 2021, that there was no valid reason to file any additional pleadings and she had informed Cox as much. Counsel stated that Cox wanted her to withdraw and that he wanted an additional three months to file an amended petition. Cox confirmed that this was correct. After admonishing Cox about his right to counsel and the difficulties of

6

representing himself, the court found that Cox knowingly and voluntarily waived his right to postconviction counsel and allowed counsel to withdraw.

¶ 28    On April 5, 2021, Cox filed a *pro se* amended petition adding the claim that trial and appellate counsels were ineffective for failing to challenge his charging instrument where it did not identify the victim by name, initials, or description, but only as "a minor victim." The State filed a motion to dismiss the amended petition. The court granted the State's motion on August 23, 2021. On November 17, 2022, the Fourth District affirmed the circuit court's dismissal of Cox's postconviction petition in *People v. Cox*, 2022 IL App (4th) 210524-U.

¶ 29                    E. Petition for Relief From Judgment

¶ 30    On October 27, 2023, Cox filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)). He raised two claims, which he alleged "were not available to be presented for review by the jury at the time of trial."

¶ 31    The first issue he raised regards two allegedly exculpatory DNA reports, one dated June 23, 2016, and one dated July 11, 2016, which were concluded and first presented posttrial after the verdict, but before he was sentenced in September 2016. Cox argued that the reports implicated Robert B. as the contributor of the DNA found in H.V.'s underwear, to the exclusion of Cox. Cox alleged that had these test results been presented to the jury, it was "very unlikely" that the jury would have found him guilty. He added that since the samples were submitted to the lab for testing in July 2014, but not concluded and available until after the verdict, "the possibility of prosecutorial misconduct cannot be excluded."

7

¶ 32    In his second issue, he claimed that "upon information and belief," H.V. recanted her allegations that Cox assaulted her, and she was allegedly under duress at the time of her testimony to testify against him.

¶ 33    Cox also attached two DNA reports from 2016 as supporting evidence for his first claim. These were the same reports that served the basis for his unsuccessful posttrial motion. Cox summed up his petition by stating that "based on the presentation of newly discovered evidence of actual innocence in form of exculpatory Ill. State Police crime lab report exonerating petitioner Fred Cox and victim recantation testimony," his conviction should be vacated and his cause remanded for a new trial.

¶ 34    On November 22, 2023, the State filed a motion to dismiss Cox's petition, arguing that it was untimely since the two-year statute of limitations had long passed and Cox cited no viable exceptions to allow the late filing of his petition. In response to Cox's claim that "the possibility of prosecutorial misconduct cannot be excluded" for the posttrial availability of the DNA test results, the State argued that Cox was fully aware and in possession of the reports since August 2016, when his posttrial motion hearing was held. Thus, the State argued, there was nothing to excuse Cox's late filing of his petition. The State also argued that Cox had no evidentiary support for his claim that H.V. recanted her testimony.

¶ 35    On January 8, 2024, Cox filed a response to the State's motion to dismiss and a "supplemental petition," arguing that the two-year statute of limitations did not apply to him because he was challenging a "void" judgment based on "prosecutorial misconduct" and fraudulent concealment. According to Cox, he was facing "an ongoing" denial of his eighth amendment rights against cruel and unusual punishment where he continues to be incarcerated for a crime he did not commit. Cox also claimed that his conviction was not valid where he was

8

prevented from presenting "exculpatory DNA evidence to his jury." He also alleged that the "prosecution rushed the case to trial and blocked the DNA report from entering as evidence." Cox added that "the State's conduct produced a 'no fault' *Strickland* scenario. It rendered Cox's attorney ineffective through no fault of his own," where both Cox and his attorney "were prevented from the DNA report until—suspiciously—immediately after the jury verdict." Cox also argued that H.V.'s "recantation testimony" is "corroborated with scientific evidence." He also claimed that "it's too soon in the proceedings to dismiss recantation testimony without properly developing the record" and before interviewing H.V.

¶ 36    On February 16, 2024, the court granted the State's motion to dismiss Cox's petition for relief from judgment. When the court explicitly asked Cox if he had any evidentiary support to back up his claim that H.V. recanted her testimony, Cox admitted that he had no such evidence and was not allowed to contact H.V.

¶ 37    With respect to the DNA reports, the court agreed with the State that Cox was in possession and aware of the reports by August 2016, before he was sentenced on September 23, 2016. The court noted that Cox also based his direct appeal on the DNA reports, which he lost, and raised the issue again in his prior postconviction petition. The court stated that Cox was well aware that there was DNA taken during the investigation and a determination was made to go to trial without the DNA test results. The court also referenced the posttrial hearing where H.V.'s mother testified regarding how Richard B.'s DNA could have been transferred to H.V.'s underwear while in the dirty laundry pile. Because all of this was known to Cox in 2016, long before the September 23, 2018, deadline for filing his section 2-1401 petition, the court ruled that Cox's petition was untimely.

¶ 38    Cox now appeals from the dismissal of his petition.

¶ 39                                    ANALYSIS

¶ 40    OSAD argues that dismissal of the petition was proper, and there are no meritorious arguments to the contrary. In the memorandum supporting its *Finley* motion to withdraw as counsel, OSAD states that it considered raising three potential issues on appeal: (1) whether the circuit court erred in dismissing Cox's petition on the ground that it was untimely; (2) whether the dismissal of Cox's petition was in error because it had a potentially meritorious claim or one that had not already been litigated in prior proceedings; and (3) whether any procedural error occurred in the court's handling of Cox's petition for which he would be due relief. OSAD has determined that these issues would be without arguable merit, and the court's dismissal of the petition was therefore proper. As we agree with counsel's assessment, we grant OSAD leave to withdraw.

¶ 41                        A. Petition for Relief From Judgment

¶ 42    A petition for relief from judgment pursuant to section 2-1401 of the Code is intended to correct errors of fact that were unknown to the petitioner and the court at the time of the judgment, and which, if known, would have prevented the rendition of that judgment. *People v. Pinkonsly*, 207 Ill. 2d 555, 565 (2003). A section 2-1401 petition is "not designed to provide a general review of all trial errors nor to substitute for direct appeal." (Internal quotation marks omitted.) *People v. Haynes*, 192 Ill. 2d 437, 461 (2000). In order to be entitled to relief under this section, the petitioner must set forth (a) a meritorious claim or defense, (b) due diligence in presenting the claim or defense in the original action, and (c) due diligence in filing the petition. *People v. Coleman*, 206 Ill. 2d 261, 289 (2002). The petition must also "be supported by an affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2-1401(b) (West 2022).

¶ 43    When the circuit court's ruling on a section 2-1401 petition involves a fact-dependent challenge, we review the circuit court's decision for abuse of discretion. *Warren County Soil &*

*Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 50-51. However, as in the present matter, when the court's dismissal of a section 2-1401 petition is based solely on a legal challenge, we review its decision *de novo*. *Id.* ¶¶ 43-47 (examining the decision in *People v. Vincent*, 226 Ill. 2d 1 (2007), which applied *de novo* review to the dismissal of a section 2-1401 petition without the benefit of responsive pleadings and without giving the petitioner notice and an opportunity to be heard, *sua sponte*).

¶ 44     Section 2-1401 petitions must be filed within two years of the entry of the challenged judgment. 735 ILCS 5/2-1401(c) (West 2022). This time limitation is mandatory, and petitions filed after the two-year period will generally not be considered. *People v. Gosier*, 205 Ill. 2d 198, 206 (2001) (citing *People v. Caballero*, 179 Ill. 2d 205, 210 (1997)). However, the Code provides that "[t]ime during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." 735 ILCS 5/2-1401(c) (West 2022); see also *Pinkonsly*, 207 Ill. 2d at 563-64. Furthermore, the time limitation does not apply if the opposing party has waived it, or if the judgment being challenged is void. *Gosier*, 205 Ill. 2d at 206-07.

¶ 45                              B. Timeliness of Cox's Petition

¶ 46     The circuit court entered final judgment against Cox when he was sentenced on September 23, 2016. Cox filed his petition on October 27, 2023, over seven years after the entry of final judgment and well past the two-year limitations period. He did not allege that any of the factors that would toll the two-year period apply here. Furthermore, there are no facts in the record that would support an argument that Cox was under legal disability or duress, or that his grounds for relief had been fraudulently concealed from him.

11

¶ 47    In his petition, Cox relied on the same DNA test results that formed the basis for his unsuccessful posttrial motion in August 2016, and prior to that, the parties were fully aware that evidence had been submitted for DNA testing in July 2014. The parties agreed to proceed to trial in December 2015 while the results were still pending, and, in the absence of DNA evidence, defense counsel argued that the State had not met its burden of proof on H.V.'s uncorroborated testimony alone. It was only after the verdict—but before sentencing—that the defense moved to hold the sentencing in abeyance until the test results were concluded. Therefore, Cox cannot now argue fraudulent concealment, as it is rebutted by the record.

¶ 48    OSAD also considered whether there were any grounds to argue that Cox's convictions were void, which would allow the circuit court to consider his untimely petition. *Gosier*, 205 Ill. 2d at 206-07. OSAD concluded that there is no arguable merit to support a voidness claim, and we agree.

¶ 49    Illinois recognizes two types of void judgments. *People v. Thompson*, 2015 IL 118151, ¶¶ 31-32. First, a final judgment is void where the court that entered it lacked personal or subject-matter jurisdiction. *Id.* ¶ 31. Second, a judgment is void where it is based upon a facially unconstitutional statute, which is void *ab initio*. *Id.* ¶ 32. Despite Cox's attempt to raise a voidness claim, there is no meritorious basis for such an argument. Being under a prison sentence for a crime after a properly-entered conviction and sentence does not render Cox's conviction void or unconstitutional. As such, no exception for the two-year statute of limitations exists.

¶ 50                    C. Substantive Merit of Cox's Claims

¶ 51    While we may properly end our discussion here, as the untimeliness of his petition is fatal to Cox's appeal, we will continue our review of the issues that OSAD considered raising. OSAD next argues that neither of Cox's two claims have arguable merit.

¶ 52    Cox's first claim is that two "exculpatory DNA reports" implicated Robert B. as the contributor of the DNA found in the crotch of H.V.'s underwear. Cox alleged that had these test results been presented to the jury, it is "very unlikely" that the jury would have found him guilty. This claim has already been litigated where it was the subject of a posttrial motion hearing and an argument raised on direct appeal, which the Fourth District rejected. *Cox*, 2019 IL App (4th) 160696-U. Therefore, this claim is barred by *res judicata*.

¶ 53    The doctrine of *res judicata* precludes petitioners from relitigating previously resolved issues. *People v. Stoecker*, 2020 IL 124807, ¶ 29. A "final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." (Internal quotation marks omitted.) *Id.* Here, the circuit court conducted an extensive posttrial hearing on whether the DNA test results would have probably resulted in a different verdict so as to warrant a new trial, and this argument was further unsuccessfully argued on direct appeal. *Res judicata* thus precludes Cox's first claim from being raised here.

¶ 54    Cox's second claim, that H.V.'s "recantation testimony" exonerated him, was wholly unsupported. When the court explicitly asked Cox if he had any evidentiary support to back up his claim that H.V. recanted her testimony, Cox admitted that he had no such evidence and was not allowed to contact H.V. As such, both claims in Cox's petition lack legal merit.

¶ 55                        D. Procedural Error

¶ 56    The last of OSAD's potential issues on appeal is whether the circuit court committed any procedural error regarding his petition.

13

¶ 57     Under section 2-1401, once a defendant files a petition for relief from judgment, the State has 30 days in which to answer the petition or otherwise plead in response. 735 ILCS 5/2-1401 (West 2022); *People v. Laugharn*, 233 Ill. 2d 318, 323 (2009). The circuit court may not *sua sponte* dismiss a petition before the 30-day period has passed. *Laugharn*, 233 Ill. 2d at 323 (holding that the *sua sponte* dismissal of a petition prior to the "usual 30-day period to answer or otherwise plead" was premature because the petition was not yet "ripe for adjudication"). If the opposing party fails to respond to the petition within that 30-day period, the petition "is treated as properly stating a cause of action," and the court can grant or dismiss it *sua sponte*. See *People v. Matthews*, 2016 IL 118114, ¶ 8; *Vincent*, 226 Ill. 2d at 9. If the court dismisses the petition before the 30-day response period expires, the reviewing court must vacate the dismissal order and remand the case for further proceedings. *Laugharn*, 233 Ill. 2d at 323-24.

¶ 58     Here, Cox's petition was filed on October 27, 2023. The State filed its motion to dismiss on November 22, 2023. The court ultimately granted the State's motion to dismiss on February 16, 2024, almost four months after Cox filed the petition. Accordingly, no meritorious argument can be made that the court failed to comply with the procedural requirements of section 2-1401 of the Code.

¶ 59                                     CONCLUSION

¶ 60     As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 61     Motion granted; judgment affirmed.